**NOT DESIGNATED FOR PUBLICATION**

## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-523


**KAREN MARSHALL**

**VERSUS**

**SATRICA WILLIAMS BENSAADAT**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2005-2808
HONORABLE RONALD F. WARE, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


## JOHN D. SAUNDERS
## JUDGE


**\*\*\*\*\*\*\*\*\*\***


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and John D. Saunders, Judges.


**AFFIRMED.**


**Ralph Jerone Williams**
**Attorney at Law**
**150 Lucille Street**
**Lake Charles, LA 70601**
**(337) 433-0634**
**Counsel for Defendant Appellee:**
**Satrica Williams Bensaadat**

**Karen Marshall**
**In Proper Person**
**677 Dixy Drive**
**Lake Charles, LA 70601**
**(337) 377-7647**
**Counsel for Plaintiff Appellant:**
**Karen Marshall**

**SAUNDERS, Judge.**

This is a legal malpractice case where a *pro se* plaintiff claims to have retained an attorney to defend her from a lawsuit. The answer to that lawsuit was not filed timely. As a result, a default judgment was granted against the plaintiff.

The trial court found that the plaintiff failed to establish that she had retained the attorney to represent her. We find no manifest error in this judgment.

AFFIRMED.

**FACTS AND PROCEDURAL HISTORY:**

On or about November 7, 2003, Lawrence J. Italio (Italio) claimed to have received a report that three children were digging holes and preparing to make mud pies within the residential dwelling complex owned by the Sulphur Housing Authority (SHA). In response to this report, Mr. Italio went to the scene and allegedly found three children digging holes in the company of a number of buckets and bottles of water. The three children were escorted to their homes by Italio and other personnel.

Following this incident, Karen Marshall (Marshall) filed a criminal complaint alleging that Mr. Italio committed simple battery upon a juvenile, her minor son. Further, Marshall filed an administrative complaint with the United States Department of Housing and Urban Development. On January 20, 2004, Marshall entered into a contract with Satrica Williams-Bensaadat (Williams). By the terms of that contract, Williams was to represent Marshall and Marshall's husband in a personal injury case on behalf of the couple's minor son.

Williams filed suit on behalf of Marshall against Italio, the SHA, and the City of Sulphur alleging that Italio personally injured Marshall's son. On April 5, 2004, Italio and the SHA filed suit against Marshall for slander. Marshall claims that on

April 6, 2004, after she received service of this lawsuit, she called Williams' paralegal, Marlene Marceaux, to bring the lawsuit into the office. Marshall claims to have done so on April 7, 2004, and in that meeting with Williams's paralegal, the paralegal told Marshall that "she would take care of it."

On May 18, 2004, unbeknownst to Marshall, a default judgment was entered against because she failed to answer the lawsuit filed by Italio and the SHA timely. On June 11, 2004, Marshall filed an untimely answer with the help of Williams. Williams claims that she had not seen the petition against Marshall until that day and that she helped Marshall answer the petition out of a courtesy to Marshall, who Williams represented in another matter. Williams sent the answer to be filed by hand delivery and faxed a copy of the answer to the attorney for Italio. Once Italio's attorney received the fax, he called Williams to inform her that he had already received a default judgment in the case. According to Williams, she informed Marshall of the default judgment and told Marshall that there was no more she could do for her regarding the case against her.

Prior to the trial on the merits of the Marshall's case against Italio and the SHA, Williams was allowed to withdraw as counsel of record. A trial on the merits was held in that case, with a judgment reached that Italio and the SHA were not indebted to Marshall. Further, sanctions were imposed against Marshall's husband, and Marshall was ordered by the trial court to write a letter of apology to Italio. Marshall appealed to this court, and this court affirmed as to the defendants prevailing, but reversed the sanctions against Marshall and reversed the order to write a letter of apology.

On May 25, 2005, Marshall filed suit against Williams alleging legal

malpractice by Williams for failure to timely answer the lawsuit filed by Italio. After the trial court addressed various procedural issues not pertinent to this appeal, a trial was held regarding Marshall's claim against Williams, with Marshall proceeding *pro se*. The trial court found that Marshall failed to prove that she had retained Williams to defend her from the lawsuit filed by Italio. Marshall then filed the appeal that is now before us. Marshall has not specifically listed any assignment of error. Given, given that Marshall is proceeding without counsel, in the interest of justice and judicial economy, we will review the judgment of the trial court to determine whether any error was committed.

**DISCUSSION OF THE MERITS:**

Marshall argues in brief that the trial court should have found that her attorney, Williams, failed to timely answer the petition filed against Marshall by Italio. We find no merit in this argument.

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

In this particular case, Marshall's underlying claim against Williams was legal malpractice. "A legal malpractice plaintiff must establish a *prima facie* case by showing that she and the attorney had an attorney-client relationship and that her attorney was negligent." *Guidry v. Coregis Ins. Co.*, 04-325, p.4 (La.App. 3 Cir. 12/29/04), 896 So.2d 164, 172 (footnote omitted). Once the plaintiff has established a *prima facie* case, "the burden of production shifts to the Defendant attorneys, charging them to provide evidence sufficient to prove the Plaintiffs would not have

3

prevailed on the underlying claim." *Id*.

After the trial, the trial court found "judgment in favor of defendant, SATRICA WILLIAMS-BENSAADAT. Plaintiff, Karen Marshall, failed to prove that she retained Satrica Williams-Bensaadat to represent her in this matter." Whether Marshall failed to prove that she retained Williams to represent her is a finding of fact. As such, the manifest error standard of review applies.

After a thorough review of the record, we cannot say that the trial court reached an unreasonable conclusion. No evidence exists in the record of any contract between Marshall and Williams that indicates an attorney-client relationship existed in the matter of defending Marshall from the petition filed by Italio and the SHA. The only evidence that tends to show that Marshall retained Williams is Marshall's self-serving testimony that Williams' paralegal said that "she told us that she would take care of it," and the fact that Williams attempted to file an answer to Italio's suit on Marshall's behalf, although that answer was not timely.

Marshall's soliloquy of the events that occurred is as follows:

> I do have a copy of the contract where I signed on as Satrica's client on January 20th, 2004. On November 7th, 2003, Mr. Italio assaulted my son, John. We pressed charged. But Skipper Drost, the city prosecuting attorney in Sulphur, - - her's also the HUD attorney, and he rejected the charges. So we hired on as Satrica's client. And, like I said, there's a copy of the contract.
> Then on April 6th of 2004, I got a petition saying that Mr. Italio was suing me. And I'd never been sued before. I got real upset. I called Marlene[,Williams's paralegal]. Marlene said that even though I didn't have an appointment to bring it in the next day, and she'd go over it with me.
> And the petition clearly said there was a ten-day time period to answer it. We took the petition into Satrica's office. Satrica wasn't there because she worked full time at the Public Defender's Office.
> And [on April 7, 2004] Marlene made a copy of Mr. Italia's [sic] petition, and she took notes on her copy. Then she told us that she would take care of it. Then she - - it was supposed to be answered within the ten-day period. Satrica's office didn't answer it until June 11th, June 11th,

2004.

So, on May 18th, Sulphur City Court rendered a default judgment against me because the petition hadn't been answered.

Marshall's self-serving testimony is directly contradicted by Williams' self-serving testimony that Marshall had never retained Williams for this matter. Williams testified to the following:

> A    Once I spoke with Ms. Marshall, it was way after the time period to file an answer for the original petition in Sulphur City Court [filed by Mr. Italio against Marshall].When she came in, I explained to . . . her in detail that I do not represent her on the matter in city court, that has nothing to do with the district court matter that I was representing her at the time she came into my office when I filed the answer to the petition in Sulphur.

With regard to why Williams filed the answer for Marshall, Williams testified to the following:

> A    I filed the answer. And when [Mr. Italio's attorney] got it, he sent - - he called me and told me he was going to fax the default judgment, and which he did. And I let [Marshall] know. And, I mean, that was the end. That's all I could have done at that point, because I was not representing her on that city court. In fact, I told her that I do not represent in Sulphur City Court.

> Q    So prior to that day, you had not done much work in Sulphur City Court?

> A    Prior to that day, I hadn't done any work in Sulphur City Court.

> Q    But you filed this in order to attempt to assist her and stop prescription?

> A    Exactly.

> Q    And you did it on the exact day that she came in?

> A    I did it on the day she came in and we went over the petition.

When the trial court decides to accept the testimony of one witness over that of another regarding a finding of fact that is before an appellant court, the decision of the trial court cannot be manifest error. As such, we conclude that Marshall's

5

assertion that this court should find Williams' office responsible for the default judgment entered against Marshall is without merit.

**ANCILLARY MATTER:**

Marshall stated in brief, "[i]f you think you should make Satrica pay me anything for what we have suffered, and the work I have done considering that I am not an attorney, I will leave that in your hands." Regardless of whether this is deemed a request for costs, a request for "attorney's fees," as she acted as her own attorney, or a request payment for work done on this appeal, given that we found no error in the trial court's judgment, we deny this request by Marshall.

**CONCLUSION:**

Marshall failed to correctly raise any particular assignment of error. Given that Marshall was representing herself, that she was not an attorney, and in the interest of justice and judicial economy, we conducted a review of the judgment reached by the trial court. We found no manifest error by the trial court. Further, we deny Marshall's request for costs and fees for work done on this appeal. All costs of these proceedings are to be paid by Marshall.

**AFFIRMED.**

6